**SO ORDERED.**

**SIGNED this 23 day of August, 2022.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## RALEIGH DIVISION

IN RE:                                                                                      CASE NO. 20-00401-5-DMW

DUANE DOUGLAS CRONISER
                                                                                                       CHAPTER 13
            DEBTOR

### ORDER MODIFYING CHAPTER 13 PLAN

This matter comes on to be heard upon the Trustee's Motion to Modify Chapter 13 Plan ("Motion") filed by John F. Logan, Esq. ("Trustee"), Chapter 13 trustee, on February 28, 2022 and the Debtor's Response to Motion to Modify Chapter 13 Plan filed by Duane Douglas Croniser ("Debtor") on March 19, 2022.  The court conducted a hearing in Raleigh, North Carolina on April 21, 2022.  Michael B. Burnett, Esq. appeared for the Trustee, and Travis Sasser, Esq. appeared for the Debtor.  Based upon the pleadings, the arguments of counsel and the case record, the court makes the following findings of fact and conclusions of law:

Background

1.      The Debtor filed a voluntary petition for relief under Chapter 13 of the United States Bankruptcy Code on January 30, 2020 ("Petition Date").  The Trustee is serving as Chapter 13 trustee to fulfill the duties as provided in 11 U.S.C. § 1302.

2.      On the Petition Date, the Debtor owned a one-half interest in a vacant, residential lot ("Property") in Leyden, New York. The Debtor attributed a value of $17,900.00 to the Property on his schedules of assets filed with the court. No liens encumbered the Property on the Petition Date.

3.      Pursuant to the terms of the Debtor's Chapter 13 Plan ("Plan"), confirmed by the court on May 26, 2020, the Debtor is required to make 60 monthly payments in the amount of $600.00 to the Trustee for a total of $36,000.00. General unsecured claims against the Debtor total $125,943.31, and the Plan states that non-priority unsecured claims will receive approximately $26,825.00 pursuant to 11 U.S.C. § 1325(a)(4), commonly referred to as the "liquidation test." Under the liquidation test, Chapter 13 debtors must account for any non-exempt equity in property they own, and "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim [must] not [be] less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7." 11 U.S.C. § 1325(a)(4).

4.      The liquidation test amount of $26,825.00 in the Plan included the value of the Debtor's interest in the Property, although the Debtor stated in the Plan that his calculations assumed a six percent cost of sale for real property. The Debtor has a 36-month "applicable commitment period" under 11 U.S.C. § 1325(b), but the 60-month repayment period under the Plan allowed the Debtor to account for his calculated equity in the Property over a longer period of time.

5.      Under the terms of the Plan, property of the estate vested in the Debtor upon confirmation. The Plan included a nonstandard provision stating that "The Debtor shall be permitted to receive all net proceeds from the sale of vested property and/or exempt property that

is sold during the pendency of the case. This provision shall not prejudice and/or impact the rights of parties pursuant to 11 U.S.C. [§] 1329."

6. In October 2020, after confirmation of the Plan, the Debtor sought court approval to sell the Property for $34,900.00. At the hearing on the Debtor's Motion to Sell Property, the Trustee noted the disparity between the scheduled value and the sale price of the Property, and the court likewise expressed concern with the Debtor's lower valuation of the Property on his schedules before the Property vested in the Debtor upon confirmation. The court entered an Order ("Sale Order") on November 19, 2020 allowing the sale of the Property but requiring that the Debtor's share of the net sale proceeds be held in trust by the Debtor's counsel pending further order from the court. The Property sold in late November 2020, and the Debtor's counsel received the amount of $16,376.02 ("Net Proceeds") pursuant to the Sale Order.

7. The Sale Order contained the following provision:

> If the Trustee elects to seek a modification of the Plan, that motion must be filed within sixty days of the date of this Order. If the Trustee declines to seek a Plan modification, then the clerk is directed to schedule a hearing immediately after the expiration of that sixty-day period for the court to determine the disbursement of the balance of the sale proceeds.

8. The court also entered another Order ("Amended Confirmation Order") on November 19, 2020 amending its prior Order Confirming Chapter 13 Plan, in order to provide that property of the estate would not vest in the Debtor until discharge.

9. The Debtor appealed both the Sale Order and the Amended Confirmation Order. Due to the pendency of the appeals, the Trustee took no action to seek a Plan modification, and the clerk did not schedule a status conference as contemplated by the Sale Order. The court held a status conference on October 27, 2021 to discuss the status of the appeal and the status of the Debtor's case.

10. On February 9, 2022, Judge Flanagan of the United States District Court for the Eastern District of North Carolina issued an Order resolving both appeals. The District Court affirmed the Sale Order and reversed the Amended Confirmation Order. The Debtor has appealed the Order of the District Court to the United States Court of Appeals for the Fourth Circuit, and that appeal is pending.

11. On February 28, 2022, the court gave notice that it would rescind the Amended Confirmation Order, unless a party with standing requested a plan modification under 11 U.S.C. § 1329 in a manner consistent with the terms of the Amended Confirmation Order by March 28, 2022. The Trustee filed the Motion on February 28, 2022, and the court determined it would address rescission of the Amended Confirmation Order in conjunction with ruling on the Motion. The Trustee does not seek to change the vesting provision of the Plan, so the Amended Confirmation Order should be rescinded.

12. The Trustee seeks modification of the Plan to increase the Plan base–

> by the approximate difference between the [scheduled] value of the Debtor's one-half interest in the Property (which has already been factored into the liquidation test provided in the Plan) and the Net Sale Proceeds. . . . The [scheduled] value of the Debtor's one-half interest in the Property was $8,950.00, and the Net Sale Proceeds were $16,376.02. The difference is $7,426.02.

The proposed modification would require $15,600.00, as paid to the Trustee through February 2022, followed by $812.00 per month for 35 months (an increase of $212.00 per month for the remaining 35 plan payments, totaling $7,420.00).[1]

---

[1] The amount of $15,600.00 paid through February 2022 is $600.00 (one plan payment) more than what was required under the Plan through February 2022 (25 payments of $600.00, or $15,000.00). It is unclear whether the additional $600.00 was included intentionally by the Trustee in his calculations, because the increase to the monthly payments over the remainder of the plan term adds up to almost exactly the difference between the scheduled value of the Debtor's interest in the Property and the Net Proceeds. To avoid any further confusion of the plan payments, any excess that may have been paid by the Debtor may be credited by the Trustee toward future payments or may be refunded to the Debtor upon the completion of the required payments under this modified Plan.

13. The Trustee brought the Motion pursuant to 11 U.S.C. § 1329(a)(1), which permits modification to "increase or reduce the amount of payments on claims of a particular class provided for by the plan." 11 U.S.C. § 1329(a)(1). The Trustee projects that the dividend to general unsecured creditors would increase from approximately 21% under the current Plan to approximately 27% under the proposed modified plan. The Trustee requests that the court either direct that the Net Proceeds be remitted to the Debtor or direct that $7,420.00 be remitted to the Trustee, representing the sum of the proposed increase in remaining monthly payments, with the remainder of the Net Proceeds remitted to the Debtor.

## Discussion

### *The Motion is not Time-Barred by the Sale Order*

14. The Debtor has asserted numerous arguments against the Motion. As a preliminary matter, the Debtor argues that the Motion is not timely because it was not filed within 60 days from the date of the Sale Order. The court included the deadline in the Sale Order to ensure that the anticipated Net Proceeds would not be held in trust by the Debtor's counsel unreasonably long pending a determination of their proper disbursement, but the Debtor elected to appeal the Sale Order. As noted by Judge Flanagan, the Sale Order served to maintain the status quo while the Trustee assessed the circumstances of this case and deliberated seeking Plan modification. The Trustee did not seek modification of the Plan prior to the deadline in the Sale Order, because the Debtor's appeal of the Sale Order remained pending. The Debtor was not harmed by the Trustee's failure to seek modification of the Plan within the time allotted in the Sale Order, and under these circumstances, the court will not deem the Motion time-barred under the asserted doctrines of laches and the law of the case, or otherwise.

*The Court has Jurisdiction Over the Motion*

15. The Debtor denies that this matter concerns administration of the Debtor's estate pursuant to 28 U.S.C. § 157(b)(2)(A). Even though the Motion seeks to account for the Debtor's receipt of proceeds from vested property, the Motion involves modification of the Plan being administered by the Trustee. A post-confirmation plan modification pursuant to § 1329 is a core proceeding pursuant to both 28 U.S.C. § 157(b)(2)(A) and (L) (deeming confirmation of plans a core proceeding), and the court has the authority to hear and determine this matter pursuant to 28 U.S.C. § 157(b)(1).

16. The court has subject matter jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina. The Debtor challenges the court's subject matter jurisdiction over the Net Proceeds specifically, and the court will address that argument *infra*.

*The Debtor has Experienced a Substantial and Unanticipated Change in his Financial Condition*

17. In the Fourth Circuit, a "party seeking modification [must] demonstrate[] that the debtor experienced a 'substantial' and 'unanticipated' post-confirmation change in his financial condition." *Murphy v. O'Donnell (In re Murphy)*, 474 F.3d 143, 149 (4th Cir. 2007) (quoting *In re Arnold*, 869 F.2d 240, 243 (4th Cir. 1989)).[2] This standard is implemented to preserve the doctrine of *res judicata* as it relates to a court's prior order confirming a plan or modified plan. The Trustee, as the party seeking modification, bears the burden of proof. *In re Matusak*, No. 14-02032-5-SWH, 2017 Bankr. LEXIS 3166, at *8 (Bankr. E.D.N.C. Sept. 19, 2017).

---

[2] The Trustee requests the court to find that the "extra-statutory" "substantial and unanticipated" inquiry stated by the Fourth Circuit is not necessary when reviewing a proposed Chapter 13 plan modification under § 1329. The court is bound by the precedent of *Murphy* and *Arnold*; however, the Trustee's argument will be preserved if this Order is appealed.

18. The Debtor asserts that the Trustee has not carried his burden to warrant modification of the Plan, noting that the Trustee presented no evidence to show the Debtor's change in his financial condition was substantial and unanticipated.[3] With *Murphy* as guidance, this court can conclude the change was substantial without the need for additional evidence beyond the case record. In *Murphy*, the debtor sold real property at a price that was 51.6 percent higher than the scheduled value, 11 months after the debtor filed his petition. 474 F.3d at 152. The Fourth Circuit found that "[u]nquestionably, the money received by Murphy on the sale of his condominium represents a 'substantial' improvement in Murphy's financial condition." *Id.* (quoting *Arnold*, 869 F.2d at 243). In this case, the Property sold for an amount 94.9 percent higher than the scheduled value, ten months after the Debtor filed his petition. The $17,000.00 increase in the value of the Property may not seem substantial based upon the dollar amount, but the change represents a significant change in the Debtor's financial condition based on the percentage increase. This analysis is consistent with *Murphy* and allows for a more uniform evaluation of changes on a case-by-case basis. As in *Murphy*, the Debtor experienced a substantial change in his financial condition when he sold the Property.

19. "A change is unanticipated if the debtor's present financial condition could not have been reasonably anticipated at the time the plan was confirmed." *Murphy*, 474 F.3d at 149 (citing *Arnold*, 869 F.2d at 243). In *Murphy*, the court noted that the parties stipulated to the average housing price increases in the area during the two years preceding confirmation of the plan, finding that compared to the average increase of up to 13 percent, the 51.6 percent increase "certainly" was unanticipated. *Id.* at 152. In this case, the Trustee presented no evidence to establish the average increase in value of real estate in the geographical area of the Property, but that evidence

---

[3] The Debtor also disputes that he has experienced any improvement in his financial condition, because the Net Proceeds are being held in trust. The court finds this argument to be without merit.

7

is unnecessary under the circumstances of this case. Again, ten months after the Debtor filed his petition, he and the co-owner sold the Property for an amount 94.9 percent higher than the scheduled value. That increase is certainly not standard under ordinary circumstances. The Debtor did not provide any justification for the substantial increase in value over the short time frame. The change in the value of the Property, and the corresponding change in the Debtor's financial condition upon its liquidation, could not have been reasonably anticipated when the court confirmed the Plan on May 26, 2020.

20. The extreme change in value causes the court to wonder if the Debtor misvalued the Property on his schedules. Payment of the Net Proceeds to unsecured creditors corrects any harm to those creditors that may have resulted from the Debtor undervaluing the Property, either due to poor due diligence in preparing his schedules of assets, or worse, intentionally misstating the value. The Debtor argues that he should not be subjected to repeated liquidation tests evaluating whether his general unsecured creditors are receiving the same treatment as they would in a Chapter 7 liquidation. Although the Trustee seeks to achieve the result that would have come from a higher, perhaps more accurate, valuation of the Property on the Debtor's schedules of assets, the Trustee is not specifically requesting a new, post-confirmation implementation of the liquidation test. The Trustee is simply seeking to account for the proceeds realized from the sale under the guidelines imposed by the Fourth Circuit.

21. Using the liquidation test from the initial confirmation of a plan to bar subsequent modification would place an undue burden on Chapter 13 trustees to investigate debtors' scheduled valuations, when most debtors before this court appear to make a concerted effort to provide accurate values at the outset of a case. Debtors, on the other hand, are protected by the "substantial and unanticipated" standard to limit post-confirmation modifications. Appreciation in value of a

subsequently liquidated asset is not scrutinized in the form of a motion to modify a Chapter 13 plan or a comparison to the property's scheduled value, unless the change in circumstances is substantial, and debtors should not be able to use the liquidation test as a shield from post-confirmation modification.

*Modification of a Chapter 13 Plan May be Based on*
*Appreciation and Liquidation of a Vested Asset*

22. The Debtor asserts that the modification provisions of § 1329 are meant to address changes in a debtor's budget, not appreciation and liquidation of a vested asset. The Debtor cites 11 U.S.C. § 1327(c) and the legislative history of § 1329 to argue that receipt of the Net Proceeds may not be grounds for modification of the Plan. Section 1327(c) states that "Except as otherwise provided in the plan or in the order confirming the plan, the property vesting in the debtor . . . is free and clear of any claim or interest of any creditor provided for by the plan." 11 U.S.C. § 1327(c). The Property vested in the Debtor upon confirmation of the Plan, and consistent with Judge Flanagan's ruling, the Property remained vested in the Debtor until its sale; however, the Fourth Circuit addressed this exact argument in *Murphy* and held that "a debtor cannot use plan confirmation as a license to shield himself from the reach of his creditors when he experiences a substantial and unanticipated change in his income." 474 F.3d at 154 (citing *Arnold*, 869 F.2d at 241-43).

> If a substantial, unanticipated salary increase warrants a modification, we see no reason why substantial, unanticipated income realized from the sale of property would not also warrant a modification of a confirmed plan. Thus, *even though property vested in Murphy upon confirmation, this fact did not prevent the Chapter 13 trustee from seeking to modify Murphy's plan.*

9

*Id.* (emphasis added). Consistent with *Murphy*, the court finds the receipt of the Net Proceeds is a permissible basis for modification, notwithstanding § 1327(c).[4]

23. The Debtor argues that the *Murphy* holding was "rendered obsolete by the changes in the Bankruptcy Code in 2005 which changed the definition of income." The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 added to 11 U.S.C. § 101 a definition for "current monthly income" and amended 11 U.S.C. § 1325(b)(2) to incorporate a debtor's current monthly income into the calculation of disposable income that must be paid to unsecured creditors under § 1325(b)(1). *See* Pub. L. No. 109-8, § 102(b), (h), 119 Stat. 23, 32-33 (2005). "Current monthly income" is calculated using a debtor's income in the six-month period preceding the petition date. 11 U.S.C. § 101(10A)(A). Presumably, the Debtor is attempting to argue that because a calculation of disposable income inherently depends on a debtor's current monthly income, a figure that is set as of the petition date, the Net Proceeds cannot be considered disposable income. The *Murphy* court characterized the sale proceeds as income, but those proceeds plus a broader change in Mr. Murphy's financial condition justified the modification. The 2005 amendments affecting income calculations do not render *Murphy* obsolete.

24. The Debtor also asserts that "post-confirmation modifications are limited to ongoing budget changes as is clear from reviewing the legislative history to the 1984 Bankruptcy Code amendments," but § 1329 makes no such limitation. In light of *Murphy*'s precedent and the absence of any reference in § 1329 to budget changes as the sole grounds for modification, the court finds the Debtor's arguments without merit.

---

[4] In his arguments why § 1327(c) precludes a modification based on the sale of a vested asset, the Debtor also cites section 21(h) from the Bankruptcy Act of 1898, as amended, regarding the effect of vesting. *See* 52 Stat. 840, 853-54 (1938). The Debtor asserts *Murphy* ignored that historical understanding of vesting and was "incorrectly decided" for its holding on the effect of property vesting. While the Debtor may preserve these arguments for any appeal of this Order, the court will not address them here, because the Fourth Circuit has already ruled that § 1327(c) does not prevent modification under the circumstances of this case.

*The Proposed Modification Complies With § 1329(b)*

25. Section 1329(b) states that 11 U.S.C. §§ 1322(a), 1322(b), and 1323(c) and the requirements of 11 U.S.C. § 1325(a) apply to any modification under 11 U.S.C. § 1329(a). 11 U.S.C. § 1329(b)(1). The Debtor asserts that the proposed modification fails to satisfy the requirements of § 1325(a)(1) and (a)(3). Section 1325(a)(1) requires that a plan comply with the provisions of Chapter 13 and other applicable provisions of the United States Bankruptcy Code, and the Debtor argues that the Trustee cannot satisfy § 1325(a)(1) because the modification violates § 1327(c). The court has already dispensed with this argument.

26. Section 1325(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1325(a)(3). "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry should be whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter] in the proposal or plan. . . ." *Deans v. O'Donnell*, 692 F.2d 968, 972 (4th Cir. 1982) (quoting 9 Collier on Bankruptcy 9.20 at 319 (14th ed. 1978)).

27. The Debtor argues that the proposed modification is an abuse of the provisions, purpose and spirit of the Bankruptcy Code, and the Debtor contests the Trustee's good faith in bringing the Motion. The Debtor cites one of the main principles behind Chapter 13 reorganization, wherein a debtor is permitted to retain property in exchange for paying creditors over the life of a plan, and he asserts that modifications, like the one proposed by the Trustee, affect unfairly Chapter 13 debtors who sell their property during the pendency of the case. Chapter 13 cases are voluntary, and if a debtor does not want to risk a post-confirmation modification after selling property, then a debtor always has the option to forgo the anticipated discharge of debts and dismiss the case prior to plan completion.

28. The purpose of the modification is to allow the Debtor's unsecured creditors to share in the Debtor's improved circumstances consistent with the applicable standards of *Murphy* and *Arnold*. After all, "[w]hen a debtor's financial fortunes improve, the creditors should share some of the wealth." *Arnold*, 869 F.2d at 243. The modification does not run afoul of the standard set in *Deans v. O'Donnell*. The Debtor asserts that the Fourth Circuit "did not address the good faith aspect of a modification based on the appreciation and/or sale of a vested asset," but it appears the court did just that:

> Murphy . . . is seeking to pocket over $80,000 by selling his residence less than a year after his plan was confirmed, without paying a portion of that money to his unsecured creditors, who are receiving under the current confirmed plan only about thirty-seven cents on the dollar. In exercising his fiduciary duty, the Chapter 13 trustee proposed the modification in good faith to prevent Murphy from receiving such a substantial windfall.

474 F.3d at 153. Even if Mr. Murphy did not specifically challenge the trustee's good faith, the language in *Murphy* indicates the court considered that element of § 1325, and the court sees no difference in the circumstances of this case. The Debtor asserts the Trustee must present evidence to establish his good faith, but the court is able to make a finding as to § 1325(a)(3) from the record of this case. Like the trustee in *Murphy*, the Trustee filed the Motion as an exercise of his fiduciary duties and is seeking to ensure unsecured creditors benefit from the Debtor's change in financial circumstances. The Trustee has proposed the modification in good faith.

*Cause Exists to Maintain the Debtor's 60-month Repayment Period*

29. Section 1329(c) states as follows:

> A plan modified under this section may not provide for payments over a period that expires after the applicable commitment period under section 1325(b)(1)(B) after the time that the first payment under the original confirmed plan was due, unless the court, for cause, approves a longer period, but the court may not approve a period that expires after five years after such time.

11 U.S.C. § 1329(c). The Trustee asserts that although the Debtor has a 36-month applicable commitment period, the proposed modification is appropriate, because it maintains the 60-month repayment term chosen by the Debtor when he presented the Plan for confirmation. The Debtor denies that cause exists to approve the proposed modification under § 1329(c).

30. Cause exists to approve the proposed modification consistent with the terms of § 1329(c), because it maintains the Plan's current length and merely preserves the status quo of the Debtor's temporal commitment to make payments to his creditors. *See McKinney v. Russell*, 567 B.R. 384, 393 (M.D. Ala. 2017) (noting the debtor previously elected to perform under a 60-month plan in order to retain her vehicle, and while the original plan length did not "render unnecessary a showing of cause" in order for the modified plan to last beyond the debtor's applicable commitment period, it did "ameliorate concerns expressed in the jurisprudence and commentary that Chapter 13 debtors should not be forced into plans of extended length."). If the Trustee had proposed a modification that shortened the Debtor's repayment period, then the monthly payments under the current Plan would have been condensed into a shorter period, possibly putting the Debtor in a precarious financial position. Maintaining the current Plan length will allow the Debtor to remit to the Trustee funds equal to the difference between the scheduled value of his interest in the Property and the Net Proceeds over a longer period of time, likely increasing his chances of obtaining successfully a discharge of his remaining debts.

*The Court has Subject Matter Jurisdiction Over the Net Proceeds*

31. Pursuant to 28 U.S.C. § 1334(e) and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina, this court has jurisdiction "of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e)(1). The Debtor denies the court's

jurisdiction over the Net Proceeds pursuant to 28 U.S.C. § 1334(e)(1) and asserts that the court "does not have the power to exercise dominion or control over" the Net Proceeds, because the Property vested at confirmation and the Net Proceeds are not property of the estate. The Debtor argues that he should be remitted the Net Proceeds pursuant to 11 U.S.C. § 1327(b) and (c) and because the terms of the Plan are binding, specifically the provision that the "Debtor shall be permitted to receive all net proceeds from the sale of vested property and/or exempt property that is sold during the pendency of the case."

32. At the conclusion of the hearing, the court ruled that the Debtor's counsel should retain the Net Proceeds pending a ruling from the Fourth Circuit on the Debtor's appeal of Judge Flanagan's Order, except that counsel may remit to the Trustee each month the difference between the monthly payment under the Plan and the monthly payment under the modified Plan.

33. While Judge Flanagan found that "The bankruptcy court's restriction providing that appellant's proceeds be held in trust until Trustee 'ha[d] an opportunity to make that determination' facilitated Trustee's review by maintaining the status quo," the retention of those funds is no longer necessary now that the Plan has been modified. Contrary to the oral ruling at the hearing, the court is guardedly optimistic that the Debtor will use the Net Proceeds to complete this amended Plan and complete his journey to discharge; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Motion be, and hereby is, allowed;

2. The Plan is amended to require $15,600.00, as paid to the Trustee through February 2022, followed by $812.00 per month for 35 months for a total Plan base of $44,020.00 and total Plan length of 60 months;

3. The Net Proceeds held in trust by Mr. Sasser may be disbursed to the Debtor; and

4. The Amended Confirmation Order be, and hereby is, rescinded, so that the Property vested in the Debtor upon confirmation of the Plan.

END OF DOCUMENT